UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PATRICIA A. MORRIS                    CIVIL ACTION

VERSUS                                NO: 14-1523

TOWN OF INDEPENDENCE AND              SECTION: "J"(4)
MICHAEL RAGUSA

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 27)** filed by Defendants, Mayor Michael Ragusa and the Town of Independence, and an opposition thereto (Rec. Doc. 29) filed by Plaintiff, Patricia Morris. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation derives from the termination of Plaintiff's employment with the Town of Independence. Plaintiff, a black female, filed suit against the Town and Mayor Ragusa on June 30, 2014, alleging racial discrimination as the basis of her termination from employment. (Rec. Doc. 1, at 1-4.) Plaintiff asserts causes of action against Defendants under 42 U.S.C. §§ 1981 and 1983 for racial discrimination, under 42 U.S.C. § 1985 for conspiracy to deprive her of equal protection of the laws, and under Louisiana Civil Code article 2315 for intentional infliction of emotional distress. *Id.* at 4-5. In her complaint,

Plaintiff alleges that Mayor Ragusa hired a white male as a superintendent in the Water and Sewer Department, a position for which Plaintiff did not have the opportunity to apply, and hired a white female for the position that Plaintiff previously held. *Id.* at 3. Additionally, Plaintiff alleges that she was never given full-time hours or benefits and that she was denied opportunities for additional training and experience. *Id.*

Plaintiff began her employment with the Town on March 25, 2013, after mutual friends of Plaintiff and Mayor Ragusa informed Ragusa that Plaintiff was in need of a job. (Rec. Doc. 27-4, at 6-7.) Mayor Ragusa hired Plaintiff as an Assistant Town Clerk, a position in the Administrative Staff. (Rec. Doc. 27-2, at 1.) In that position, Plaintiff worked as a part-time employee for the Town. *Id.* Generally, Plaintiff worked three days per week. (Rec. Doc. 27-4, at 7-8.) However, Plaintiff did occasionally work a fourth day when necessary. *Id.* at 8. At the time of her hire, there was already a full-time Assistant Town Clerk, a white female hired on February 6, 2013. (Rec. Doc. 29-1, at 40.) The full-time Assistant Town Clerk was discharged because of a conflict of interest on September 16, 2013, and another full-time Assistant Town Clerk, also a white female, was hired the next day. *Id.* at 40-41. Plaintiff was discharged by Mayor Ragusa on October 24, 2013. (Rec. Doc. 1, at 3.) According

to Mayor Ragusa, Plaintiff was discharged for budgetary and performance reasons. (Rec. Doc. 27-5, at 9, 12-13.)

On September 8, 2015, Defendants filed the instant *Motion for Summary Judgment* **(Rec. Doc. 27)**, seeking dismissal of all of Plaintiff's claims against them. Plaintiff responded in opposition on October 3, 2015.

### PARTIES' ARGUMENTS

Defendants assert that they are entitled to qualified immunity and also that they are entitled to judgment as a matter of law because there are no genuine issues of material fact. With respect to Plaintiff's racial discrimination claims, Defendants contend that these claims fail for several reasons. First, Defendants argue that Plaintiff fails to meet her burden of establishing a prima facie case. (Rec. Doc. 27-1, at 7.) According to Defendants, Plaintiff cannot show that she was replaced by someone outside her protected group, because she was not replaced at all. *Id.* at 8. Defendants claim that there was a change in the structure of the department and Plaintiff's position of a part-time "Assistant Clerk" was never filled. *Id.* Furthermore, Defendants point out that the positions of full-time "Utility Clerk" and "Citation Clerk" are both currently filled by black females. *Id.* Defendants also argue that Plaintiff cannot show that she was treated less favorably than other similarly situated employees outside the protected group.

According to Defendants, Plaintiff did not have the prerequisite qualifications required for the position of superintendent in the Water and Sewer Department, and she fails to show that members outside of her protected class were afforded any additional opportunities. *Id.* at 8-9.

Second, Defendant contends that even if Plaintiff could establish a prima facie case, Defendants satisfy their burden of production to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. *Id.* at 9. Defendants maintain that Plaintiff was primarily discharged for budgetary reasons. *Id.* at 11. Specifically, there was a twenty-two percent budget cut across the Town, requiring such actions as lowering wages or discharging employees. *Id.* Defendants claim that it was determined that Plaintiff should be let go because she was the only part-time employee in the Administrative Staff, her job duties mimicked that of other employees, she was given the job as a favor and did not have a heavy workload, and Mayor Ragusa had received complaints about her performance. *Id.*

Third, Defendants claim that Plaintiff fails to offer sufficient evidence to create a genuine issue of material fact that their proffered reasons are pretext or, while true, that Plaintiff's race was another motivating factor. *Id.* at 12. Defendants argue that Plaintiff bases her allegations of racial discrimination on her personal subjective belief only, and

4

presents no evidence that their reasons for terminating her are pretext. *Id.* at 14. Furthermore, Defendants argue that the "same actor" inference applies here, which creates an inference that discrimination was not the motive behind Plaintiff's termination, because the individual who allegedly discriminated against Plaintiff is the same individual who hired her. *Id.* at 12.

In response, Plaintiff argues that she has met her burden of establishing a prima facie case of racial discrimination. (Rec. Doc. 29, at 1-4.) Plaintiff claims that she suffered an adverse employment action when she was terminated and a white female employee with the same title as Plaintiff was allowed to keep her job. *Id.* at 2. Plaintiff also argues that Defendants fail to state a legitimate, nondiscriminatory reason for her termination. *Id.* Lastly, Plaintiff contends that Defendants' proffered reasons for her termination are mere pretext. *Id.* at 3. According Plaintiff, Defendants' explanation that her termination was for budgetary, performance, or other reasons is not supported by the evidence. Plaintiff argues that Defendants stated in their discovery responses that Plaintiff was discharged for budgetary reasons, without any allegations of issues with her performance or that Plaintiff was a part-time employee. *Id.* Furthermore, Plaintiff points out that Defendants have characterized Plaintiff as both a part-time Assistant Town

Clerk and a Water Clerk. *Id.* Even if Plaintiff was terminated for budgetary reasons, Plaintiff argues that Defendants should have discharged the white Assistant Town Clerk rather than Plaintiff because Plaintiff was hired first. *Id.* at 4.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must

come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. To satisfy its burden, the party opposing summary judgment is "required to identify specific evidence in the record, and to articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

## DISCUSSION

**A.   Racial Discrimination Claims Under Section 1981**

Section 1981 guarantees "[a]ll persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. Section 1983 provides a claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's rights. *Id.* § 1983. "To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

Sections 1981 and 1983, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e, are "parallel causes of action." *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007). Accordingly, the "inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Id.* Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1).

Claims of racial discrimination based on circumstantial evidence are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under this three-part scheme, a plaintiff must first establish a prima facie case of discrimination by demonstrating that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)). Under the fourth prong's "similarly situated employees" requirement, a plaintiff must show that he was treated less favorably than others "under nearly identical circumstances." *Id.* (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009)). If the plaintiff is successful in establishing a prima facie case, a presumption of discrimination arises. *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002).

Once the plaintiff presents a prima facie case, the burden shifts to the defendant-employer to produce a legitimate,

nondiscriminatory justification for the underlying employment action. *Id.* The defendant's burden during this second step is satisfied by producing evidence, which, "*taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). It is important to note that a defendant's burden to articulate a legitimate, nondiscriminatory reason for its adverse employment action is a burden of production and not persuasion. *Hicks,* 509 U.S. at 506-07. "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 507. If the defendant meets its burden, the presumption of discrimination created by the plaintiff's prima facie case drops out. *Price*, 283 F.3d at 720.

Finally, in the third stage of the burden-shifting framework, the plaintiff is given a "full and fair opportunity to demonstrate" that the defendant's proffered reason is not true, but instead is pretext for intentional discrimination. *Id.* (quoting *Hicks,* 509 U.S. at 507-08). On summary judgment, in this third step, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Id.* "If the plaintiff can show the employer's asserted justification is false, this

showing, coupled with a prima facie case, may permit the trier of fact to conclude that the employer discriminated against the plaintiff without additional evidence." *Id.* "However, such a showing will not always be enough to prevent summary judgment, because there will be cases where a plaintiff has both established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, yet 'no rational factfinder could conclude that the action was discriminatory.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

The parties do not contest that Plaintiff satisfies the first three elements of a prima facie case of racial discrimination; however, Defendants contend that Plaintiff fails to meet her burden with respect to the fourth element because she cannot show that she was replaced or treated less favorably than similarly situated employees outside her protected group. A plaintiff may establish a prima facie case of racial discrimination by showing that she is black, that she was qualified for the position that she held, that she was terminated from that position during a reduction in force, and that a white employee in the same position was retained. *See Brown v. Miss. State Senate*, 548 F. App'x 973, 977 (5th Cir. 2013).

11

Here, Plaintiff attempts to satisfy the fourth element of her prima facie case by showing that the white Assistant Town Clerk, who was hired after Plaintiff, was retained while Plaintiff was terminated for budgetary reasons. Thus, the question of whether Plaintiff establishes a prima facie case turns on whether the white employee identified by Plaintiff as a comparator was similarly situated to Plaintiff, such that Plaintiff was treated less favorably "under nearly identical circumstances." *Lee*, 574 F.3d at 260. Generally, employees are not similarly situated when, compared to the plaintiff, the employees have different work responsibilities or different supervisors, or work in different company divisions, or were subject to adverse employment actions too removed in time or for violations too dissimilar in type. *Id*.

Plaintiff's claims she was similarly situated to the white employee because they both had the title of Assistant Town Clerk. Although it is undisputed that Plaintiff was hired as an Assistant Town Clerk, her actual employment position is less clear. At times, Plaintiff has been characterized as a "Water Clerk." (Rec. Doc. 29-1, at 40-41.) Even in her complaint, Plaintiff claims to have been employed as a clerk in the Water and Sewer Department rather than the Administrative Staff. (Rec. Doc. 1, at 2.) Moreover, Mayor Ragusa testified that he hired Plaintiff as a favor and did not think her position had a title.

12

(Rec. Doc. 27-5, at 10.) Further, Plaintiff did not perform the duties typically performed by an Assistant Town Clerk. In her deposition, Plaintiff testified that she was not given any duties of an Assistant Town Clerk and she knew on her first day of employment that she would not be working as an Assistant Town Clerk.[1] (Rec. Doc. 27-4, at 7.) Instead, Plaintiff testified that she was asked to collect water bills and sewer bills. *Id.* Likewise, Mayor Ragusa testified that "[t]he only thing she was supposed to do was collect . . . the water bills, sewer, tickets and things like that." (Rec. Doc. 27-5, at 10.) When asked whether the white Assistant Town Clerk's duties were similar to hers, Plaintiff testified, "She was the Assistant Clerk. . . . So she had a lot more to do with helping the clerk out many times." (Rec. Doc. 27-4, at 10.) Lastly, there is no evidence that Mayor Ragusa received any complaints about the white employee's performance or had ever verbally reprimanded the white employee.

Assuming, without deciding, that Plaintiff succeeds in establishing a prima facie case, the Court concludes that Defendants have met their burden of rebutting the presumption of discrimination by producing evidence of a legitimate,

---

[1] The exhibit attached to Plaintiff's opposition contains what appears to be a list of job duties signed by Plaintiff shortly after being hired. (Rec. Doc. 29-1, at 20.) The list included duties as a "Water Clerk," "Citation Clerk," "Accounts Payable," "Permit Clerk," "Tax Collection," Occupational Licenses," and other miscellaneous duties. *Id.*

nondiscriminatory justification for terminating Plaintiff. To satisfy its burden, an employer need only *articulate* some legitimate, nondiscriminatory reason for the employee's termination; the employer need not disprove the employee's prima facie case or prove absence of discriminatory motive. *Bd. of Trs. of Keene State Coll. v. Sweeney*, 439 U.S. 24, 24-25 (1978) (citing *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 578 (1978)). For example, in *Brown v. Mississippi State Senate*, the employer presented sufficient evidence of legitimate, nondiscriminatory reasons for terminating a black employee as part of a reduction in force where the employer presented evidence that the employee did not have a heavy workload and that the employer had received complaints about the employee's work performance. 548 F. App'x at 977.

At this second stage, Defendants produced evidence that Plaintiff's termination occurred primarily for budgetary reasons. In addition, Defendants put forward at least three independent reasons for terminating Plaintiff during the budget cut: First, Defendants demonstrated that Plaintiff was the only employee in the Administrative Staff working less than five days per week. (Rec. Doc. 27-4, at 7-8.) Second, deposition testimony showed that Plaintiff's job duties mimicked that of other employees. *Id.* at 9-10. Similarly, Plaintiff conceded that she was hired as a favor and did not have much work to do. *Id.* at 7-

14

8. Third, Defendants presented evidence that poor performance reviews also played a factor in Plaintiff's termination. Mayor Ragusa testified that he received several verbal complaints about Plaintiff misfiling tickets or posting them in the wrong location. (Rec. Doc. 27-5, 6-8, 11-12.) In addition, Plaintiff testified to an instance when she was verbally reprimanded by Mayor Ragusa in front of her direct supervisor for sitting outside in front of the work building and talking on her cell phone while on the job. (Rec. Doc. 27-4, at 19.) This evidence, taken as true, permits the conclusion that there were nondiscriminatory reasons for Plaintiff's termination. Accordingly, Defendants have rebutted the presumption of discrimination created by Plaintiff's prima facie case.

At the third stage, the burden shifts back to Plaintiff to create a genuine issue of material fact that either Defendants' explanation is a pretext or that Plaintiff's race was another motivating factor for Defendants' decision. Pretext can be established by showing disparate treatment or that the legitimate explanation is false or unworthy of credence. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011). Plaintiff "must substantiate her claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price*, 283 F.3d at 720. "Merely casting doubt on the employer's articulated reason does not suffice to

meet the plaintiff's burden of demonstrating discriminatory intent." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1508 n.6 (5th Cir. 1988). Here, Plaintiff fails to meet this burden. Plaintiff argues that Defendants changed their rationale for terminating her or failed to present evidence to support its decision, but Plaintiff fails to create a genuine issue of material fact by presenting evidence to support her arguments.

In support of her claim of pretext, Plaintiff cites a forty-eight page exhibit (Rec. Doc. 29-1) consisting of Defendants' responses to Plaintiff's interrogatories and request for production of documents in this case, without explaining what portions of that exhibit substantiate her claim. Plaintiff argues that Defendants, in their discovery responses, stated that Plaintiff was terminated for budgetary reasons without alleging that Plaintiff's poor work performance or part-time status were factors. However, this argument fails to show that Defendants' asserted justifications are false. Similar to the employee's termination in *Brown*, here Plaintiff's termination occurred "as part of a broader [reduction in force] necessitated by economically driven . . . budget cuts." 548 F. App'x at 977. The budget cut necessitated actions such as discharging employees, and Defendants determined that Plaintiff should be let go because she worked fewer hours, she performed fewer

duties, and Defendants received complaints about her performance.

Plaintiff also argues that Defendants make the assertion that she was a part-time employee without any factual basis. As an initial matter, the Court notes that in Plaintiff's statement of facts in response to Defendants' statement of uncontested material facts, Plaintiff admits Defendants' fourth statement: "In [her] position, Plaintiff worked as a part-time employee of the Town." (Rec. Doc. 27-2, at 1.) Yet, in other instances, Plaintiff denies that she was a part-time employee. (Rec. Doc. 29-2, at 1.) Even so, Plaintiff has produced no evidence to support her argument that she was a full-time employee or that Defendants chose to limit her work hours without notifying her of a change in her status.[2]

Lastly, in undertaking the pretext inquiry, the Court must consider Plaintiff's evidence in light of the fact that the same individual—Mayor Ragusa—hired Plaintiff and discharged her seven months later. This situation gives rise to an inference that racial discrimination was not the motive behind Plaintiff's

---

[2] The Court notes that the evidence produced by Plaintiff seems to support Defendants' argument that she was a part-time employee. Among the documents included in Plaintiff's exhibit is a list of job duties signed by Plaintiff on March 28, 2013, two days after being hired, with the words "Monday/[Wednesday]/Thursday" written below Plaintiff's signature. (Rec. Doc. 29-1, at 20.) The word "Tuesday" appears to have been stricken and replaced with the word "Wednesday" with the initials "PM" written above. *Id.* The Court can find no other evidence produced by Plaintiff relating to Plaintiff's work hours. Accordingly, Plaintiff's evidence shows that she agreed to work only three days per week.

termination. *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). In adopting the "same actor" inference, the Fifth Circuit highlighted the Fourth Circuit's explanation of the underlying rationale: "'[C]laims that employer animus exists in termination but not in hiring seem irrational.' From the standpoint of the putative discriminator, '[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.'" *Id.* (second alteration in original) (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991)). Although the "same actor" inference does not rule out the possibility that an individual could prove a case of discrimination in a similar situation, Plaintiff fails to do so in the instant case.

For the foregoing reasons, the Court concludes that Plaintiff fails to satisfy her burden of demonstrating that intentional discrimination was the reason for Defendants' decision to terminate her employment. Accordingly, Defendants are entitled to judgment as a matter of law regarding Plaintiff's claims against them for racial discrimination.

**B.  Conspiracy Claims Under Section 1985**

In addition to her claims for racial discrimination, Plaintiff also asserts that Defendants conspired to deprive her

of the equal protection of the laws, in violation of 42 U.S.C. § 1985. To prevail on a civil rights conspiracy claim under section 1985, a plaintiff must prove (1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus. *Wong v. Stripling*, 881 F.2d 200, 203 (5th Cir. 1989).

Defendants assert that Plaintiffs conspiracy claims fail because she cannot offer any evidence to show any type of agreement between Mayor Ragusa and anyone else. (Rec. Doc. 27-1, at 14.) According to Defendants, there is no evidence that Mayor Ragusa entered into an agreement to conspire against Plaintiff. Defendants point out that the entire complaint is devoid of any material facts regarding a conspiracy claim and Plaintiff made no mention of a conspiracy during her deposition. *Id.* at 14-15.

In opposition to Defendants' motion for summary judgment, Plaintiff fails to identify any evidence in the record that supports her section 1985 claims. In fact, Plaintiff's

opposition makes no mention of her section 1985 claims. For this reason, Plaintiff fails to satisfy her burden on summary judgment. Moreover, the Court concludes that Defendants' motion has merit. Accordingly, Defendants are entitled to judgment as a matter of law regarding Plaintiff's claims against them for conspiracy to deprive her of equal protection of the laws.

## C. Intentional Infliction of Emotional Distress Claims under Louisiana Law

Plaintiff also asserts that Defendants are liable to her for intentional infliction of emotional distress in violation of Louisiana Civil Code article 2315. In order to recover for intentional infliction of emotional distress, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.*

Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Id.* For example, in *White v. Monsanto Co.*, the Louisiana Supreme Court denied recovery to an employee who was reprimanded by her supervisor for not working as he thought she should. *Id.* at 1210-11. The court reasoned that the supervisor's one-minute outburst of profanity, although crude and uncalled for, did not amount to such extreme and outrageous conduct as to give rise to recovery for intentional infliction of emotional distress. *Id.*

Defendants contend that Plaintiff's claims for intentional infliction of emotional distress fail because Plaintiff has not produced any evidence to establish her claim. (Rec. Doc. 27-1, at 16.) Further, Defendants argue that Plaintiff's termination does not rise to the level of extreme and outrageous conduct that exceeds all possible bounds of decency. *Id.* Defendants maintain that Plaintiff was not subjected to humiliation, degrading comments, or insults from Mayor Ragusa. Lastly, Defendants argue that Plaintiff fails to establish that Mayor Ragusa desired to inflict severe emotional distress or that he was aware that such emotional distress would result. *Id.*

In opposition to Defendants' motion for summary judgment, Plaintiff fails to identify any evidence in the record that supports her claims for intentional infliction of emotional distress. In fact, Plaintiff's opposition makes no mention of her claims for intentional infliction of emotional distress. For this reason, Plaintiff fails to satisfy her burden on summary

judgment. Moreover, the Court concludes that Defendants' motion has merit. Accordingly, Defendants are entitled to judgment as a matter of law regarding Plaintiff's claims against them for intentional infliction of emotional distress.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion for Summary Judgment* **(Rec. Doc. 27)** is **GRANTED**. Plaintiff's claims are **DISMISSED with prejudice.**

New Orleans, Louisiana this 19th day of October, 2015.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE